J-A25015-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: H.B., MINOR CHILD | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: D.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 146 WDA 2022 |

Appeal from the Order Entered December 29, 2021,
in the Court of Common Pleas of Allegheny County,
Civil Division at No(s):  CP-02-AP-0000078-2020.

BEFORE:  KUNSELMAN, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY KUNSELMAN, J.:          **FILED: SEPTEMBER 30, 2022**

In this matter, D.B. (Mother) appeals the order terminating her parental rights to her three-year-old son H.B. pursuant to the Adoption Act. ***See*** 23 Pa.C.S.A. § 2511(a)(2), (5), (8) and (b).  Additionally, Mother's counsel has filed an application to withdraw and a brief, pursuant to ***Anders v. California***, 386 U.S. 738 (1967).  After review, we affirm, and grant counsel leave to withdraw.[1]

The record discloses the following factual and procedural history:  The Child was born in September 2018.  At the time of his birth, Mother had an active case with the Allegheny County Office of Children, Youth and Families (the Agency) involving the Child's older sibling.  Mother's involvement with the Agency was due to her mental health history, drug and alcohol issues,

---

[1] The trial court also terminated the rights of an unknown father.

intimate partner violence, physical neglect of the Child's older sibling, and homelessness. Mother had not remedied these conditions by the time of Child's birth and she remained homeless. Thus, two days following his birth, the Agency placed the Child in foster care where he has remained.

The Child was adjudicated dependent on January 9, 2019. Mother's Family Service Plan (FSP) goals were to: address mental health problems, address domestic violence, complete a parenting program, have a drug and alcohol assessment, and acquire appropriate housing. The Agency's primary concern, however, was that Mother needed to understand and accept her mental health diagnosis and receive appropriate treatment.

On June 12, 2020, the Agency petitioned to terminate Mother's rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), (8) and (b). The orphans' court conducted a hearing over the course of three days between May and October 2021. At the May 28, 2021, the Agency presented the testimony from two caseworkers that worked with Mother, as well as Dr. Terry O'Hara. The orphans' court summarized its factual findings as to the Agency caseworkers' testimony as follows:

> The testimony by the [Agency's] caseworker . . . outlines [Mother's] mental health history, the issues that she presented, her involvement with the [Agency] attempting to make reasonable efforts to resolve her mental health issues, and the fact that [Mother's] mental health issues have never been resolved. Most importantly, the Agency considered [Mother's] mental health to be the primary issue regarding the Child. [Mother's] mental health goal required that [she] receive, understand and accept her diagnosis in order to receive the correct treatment. [Mother] was diagnosed with a psychotic disorder and she sent numerous

- 2 -

different [diagnoses] to the Agency through various providers. [Mother] would continue to state that she has an anxiety disorder. The overtures, responses and interactions by [Mother] with the [Agency] caseworker, demonstrated [Mother's] volitivity and instability. . . . [The caseworker] testified that the interactions with [Mother remained] combative until she began treatment with Mercy Behavioral Health in March of 2020. This program reports that [she] has a therapist and gets an Invega shot once a month. Repeatedly, [Mother] continues to declare that she only suffers from an anxiety disorder despite being diagnosed with an additional psychotic disorder. Historically, [Mother], prior to her treatment at Mercy Behavioral Health has a number of admissions at Western Psychiatric Hospital in Pittsburgh and in December 2019, [she] was involuntarily committed by a homeless shelter to The Western Psychiatric Institute due to her out of control behavior.

Orphans' Court Opinion 2/14/22 at 3-4 (capitalization adjusted).

The orphans' court further determined from the Agency caseworker's testimony that Mother "has had no experience caring for the [Child] outside of visitation." *Id.* at 4. With regard to the visitation issue, the court found that Mother created "quite concerning and significant circumstances associated with her visitation," and recounted an incident in which Mother's actions during a visit required police intervention and caused the Agency to look for a more secure facility for future visits. *See id.*

The orphans' court also noted the testimony of the Agency's expert witness, Dr. Terry O'Hara, a forensic psychologist. Dr. O'Hara conducted three evaluations—one between Mother and the Child, one between the Child and Foster Mother, and one with Mother alone. Dr. O'Hara expressed concerns that Mother refused to participate in any type of psychological testing, refused to consent to Dr. O'Hara speaking with her psychiatrist, and refused to permit

him to obtain updated records from Western Psychiatric. As the court further explained:

> Dr. O'Hara indicated for the benefit of the court's consideration and when judging [Mother's] ability for long-term parental capacity, that individuals, based on his experience, who refused to believe they suffer from psychosis, that this unfortunately prevents appropriate treatment because there is no motivation for the relevant treatment. Further, that when a major mental illness, like a psychotic disorder is not appropriately addressed, one could become preoccupied with hallucination and delusions. Under those circumstances, Dr. O'Hara opined that it would be extremely difficult for a parent to prioritize the developmental and emotional needs of a child. Dr. O'Hara specifically articulated that a parent suffering from such delusions is preoccupied with their own psychotic brain work. In this case, concerns about the parent who believes they are being sabotaged, watched or manipulated. In support of [his] findings, Dr. O'Hara stated that the research into this dynamic shows that this can be an adverse childhood experience and places the child at risk for mental illness, substance abuse and medical concerns as well as noting that there are a multitude of studies on this subject.

Orphans' Court Opinion, 2/14/22, at 7-8 (citations to record omitted; capitalization adjusted).

At the next hearing date, August 6, 2021, Mother presented testimony from a doctor who treated her and discharged her from Western Psychiatric in February of 2020. In addition, Mother called her own mother to testify on this date.

The final evidentiary hearing occurred on October 1, 2021. Mother first presented testimony from an adult outpatient therapist at Mercy Behavioral Health that had been providing Mother therapy since September of 2020, as

well as a parenting mentor and a family support partner. Mother then testified on her own behalf. As the orphans' court explained:

> Importantly, the court carefully reviewed and considered the testimony of [Mother] as she presented for the court's consideration. The court appreciates [Mother] sharing her feelings with the court, her intentions, and her world view of her own personal history and her perspective of her experience and preparedness to parent the [Child]. The court recognizes that a significant portion of [Mother's] testimony was historic in nature and her attempt to persuade the court that the [reality] of this case as refenced throughout the court's record is not an accurate reality. When the court reviews the substantiated testimony provided for the court's consideration including the testimony of the CYF caseworker, Dr[.] O'Hara and related portions of the testimony of other witnesses, this court finds that it is [Mother's] view which is not realistically based. Portions of her testimony [were] in the form of dialogue that this court finds, as critical to assessing [Mother's] testimony, that her testimony was not only unrealistic in parts but also unfounded and also contrary to the social and legal expectations of her and her ability to achieve reunification with the [Child]. Aside from the historical information that [Mother] provided by way of her testimony, her testimony concerning the events which were more recent and her current intentions, can best be described as too little, too late. In that, the four corners of [Mother's] testimony lends support to this court finding that [Mother's] incapacities are on-going, that the reasons for the [Child's] removal continue to exist, and that [Mother's] incapacities will not be resolved within a reasonable amount of time.

Orphans' Court Opinion, 2/14/22, at 14-15 (capitalization adjusted).

By order entered December 29, 2021, the court granted the Agency's petition. Mother appealed. Both Mother and the orphans' court complied with Pennsylvania Rule of Appellate Procedure 1925.

Before we address her appeal, we note that Mother's counsel has filed a petition to withdraw and a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967) and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).[2] To withdraw pursuant to ***Anders***, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [***Anders***] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.
>
> With respect to the third requirement of ***Anders***, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights."

***In re J.D.H.***, 171 A.3d at 903, 907 (Pa. Super. 2017) (citations omitted).

Additionally, counsel must file a brief that meets the following requirements established by the Pennsylvania Supreme Court in ***Santiago***:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of

---

[2] This Court extended the ***Anders*** principles to appeals involving the termination of parental rights. ***In re X.J.***, 105 A.3d 1, 3 (Pa. Super. 2014) (citation omitted).

- 6 -

> record, controlling case law, and/or statutes on point that
> have led to the conclusion that the appeal is frivolous.

*In re Adoption of M.C.F.*, 230 A.3d 1217, 1219 (Pa. Super. 2020) (citation omitted).

Preliminarily, we find that Counsel has substantially complied with the technical requirements to withdraw.[3] *See Commonwealth v. Reid*, 117 A.3d 777, 781 (Pa. Super. 2015) (observing that substantial compliance with the *Anders* requirements is sufficient).

In addition to verifying that Counsel substantially complied with *Anders* and *Santiago*, this Court also must "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted). *Flowers* does not require us "to act as counsel or otherwise advocate on behalf of a party." *Commonwealth v. Dempster*, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*). "Rather, it requires us only to conduct a simple review of the record to ascertain if there appear on its face to be arguably meritorious issues that counsel, intentionally or not, missed or misstated." *Id.* Traditionally, we would start our review by giving "a most generous reading and review of 'the case' as presented in the entire record

---

[3] We note that counsel filed a separate petition to withdraw as counsel and referenced therein that he sent a letter to Mother advising her of her rights pursuant to *Commonwealth v. Millisock*, 873 A.2d 748 (Pa. Super. 2005) and enclosing a copy of his *Anders* brief.

with consideration first of issues raised by counsel." *See id.* (citing *Anders*, 386 U.S. at 744).

Before we conduct our independent review, however, we first address the issues counsel presented in the *Anders* brief that arguably support Mother's appeal. *See M.C.F.*, 230 A.3d at 1219. The three issues presented are as follows:

1. Did the [orphans'] court abuse its discretion and commit an error of law when it terminated [Mother's] parental rights under [23 Pa.C.S.A.] §§ 2511(a)(2), (5) and (8) when [Mother] disagreed with her mental health diagnosis, showed a willingness to perform minimal parental duties, addressed the [Agency's FSP] goals, and held a relationship with the [Child]?

2. Did the [orphans'] court abuse its discretion and commit an error of law when it found the [Agency] formulated a reunification plan that made a reasonable effort to resolve [Mother's] mental health needs?

3. Did the [orphans'] court abuse its discretion and commit an error of law when it terminated the parental rights of [Mother] under Section 2511(b) when [Mother] loves [the Child] and made efforts to satisfy the [Agency's] goals for parenting the [Child]?

*Anders* Brief at 9.

We review these issues mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because

- 8 -

the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to section 2511(b): determination of the needs and welfare of the child[.]

*In re C.M.K.*, 203 A.3d 258, 261-262 (Pa. Super. 2019) (citation omitted).

Here, the trial court terminated Mother's parental rights pursuant to Section 2511(a)(2), (5), (8), and (b). We need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Moreover, we may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201(Pa. Super. 2000) (*en banc*).

Mother's first and second issues involve the court's Section 2511(a) analysis and conclusions. As we need only agree with the orphans' court as to one subsection of Section 2511(a), we analyze whether the Agency properly

established grounds for termination under Section 2511(a)(2). That section provides in relevant part:

> **(a) General rule**.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

To satisfy the requirements of Section 2511(a)(2), the moving party must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re C.M.K.*, 203 A.3d 258, 262 (Pa. Super. 2019) (citation omitted). The grounds for termination are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied. *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010). Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties. *Id*.

Here, the orphans' court determined that Mother's incapacity and/or her refusal to parent has caused the Child to be without parental care, and that

Mother cannot or will not remedy the causes of her incapacity and/or refusal to parent:

> [Mother] in this case has continued with on-going challenges which the court finds to be both acute and chronic given the mental health issues that [Mother] continues to present and which the record indicates continue to exist. By [Mother's] own testimony, it becomes apparent that [she] has a world view with the manifestation of behaviors which are clearly not stable to ensure the [Child's] safety or otherwise [ensure] the [Child's] needs being met. Despite the best efforts of the [Agency], [Mother's] incapacities are on-going and unrelenting. [She] is in denial in a number of respects and fails to understand those commitments required of her to herself in maintaining stability.
>
> Furthermore, [Mother] has not demonstrated sufficient progress to the degree that her stabilization has allowed for her own independence emotionally and therefore [is] unable to respond to the [Child's] needs. [Mother] at times has been resistant to participating in the necessary level of therapeutic services and lacks the understanding to make the good faith efforts required of her towards reunification. The outcomes that [she] has demonstrated have resulted in impediments to [her] ability to provide day-to-day care and address the [Child's] needs and welfare. Unfortunately, given the mental health history associated with [Mother] and all of her children being out of her care, there appears to be a cycle that apparently [Mother] cannot resolve and has rendered her incapable of safely and rationally providing parental duties for the [Child]. The court acknowledges that in several of the areas related to [Mother's] Family Service Plans, that [she] has made some progress but this progress comes in the late hours of the [Child's] need for permanency.

Orphans' Court Opinion, 2/14/22, at 21-22 (formatting and capitalization adjusted).

Thus, the orphans' court concluded that the Agency produced clear and convincing evidence that Mother's "repeated and continued incapacity" has caused the Child to be "without essential care" necessary for his "physical and mental well-being" and that these conditions could not or would not be remedied. *Id.* at 24.

Upon our review, the orphans' court properly determined that the Agency established grounds under Section 2511(a)(2) by clear and convincing evidence. Moreover, our review of the record supports a conclusion that the Agency employed reasonable efforts in assisting Mother with reunification; any perceived shortcoming by the Agency was caused by Mother's refusal to cooperate and/or failure to perceive what was required of her. Thus, Mother's first and second issues are without merit.

In her third *Anders* issue, Mother argues the orphans' court abused its discretion when it found that termination best served the Child's needs and welfare. Section 2511(b) provides:

> (b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

This Court has explained that:

> [S]ection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In **In re C.M.S.**, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. **Id**. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. **In re K.Z.S.**, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. **Id.** at 763.

**In re Adoption of J.M.**, 991 A.2d 321, 324 (Pa. Super. 2010).

Concerning the bond, the question is not merely whether a bond exists, but whether termination would destroy this existing, necessary and beneficial relationship. **See C.M.K.**, 203 A.2d at 264 (citation omitted); **see also K.Z.S.**, 946 A.2d at 764 (holding there was no bond worth preserving where the child had been in foster care for most of the child's life, which caused the resulting bond to be too attenuated). We add, the court is not required to use expert testimony to resolve the bond analysis but may rely on the testimony of social workers and caseworkers. **Z.P.**, 994 A.2d at 1121. Finally, we emphasize that "[w]hile a parent's emotional bond with her and/or her child is a major aspect of the § 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when

determining what is in the best interest of the child." ***In re N.A.M.***, 33 A.3d 95, 103 (Pa. Super. 2011) (citation omitted).

Here, the orphans' court determined that no bond existed between Mother and the Child. Orphan's Court Opinion, 2/14/22, at 22. The court further noted that it considered the Child's safety needs, and the Child's bond with Foster Mother. The court then concluded:

> The relationship between the [Child] and [Mother] is not beneficial to him. The court is then presented with a perspicuous record to conclude as a matter of law that the parental rights [of Mother could be] terminated without any detriment to the [Child] and further that it best meets the needs and welfare of the [Child] for the parental rights of [Mother] to be terminated, for the [Child] to remain in the care of his current foster parent, and for the [Child] to assume and proceed in the most appropriate and permanency direction of adoption. [The Child] will evolve and will be the recipient and the beneficiary of a relationship with [Foster Mother] which is robust and enriched with the appropriate provision of care and committed emotional support through his years of adolescence and process of childhood, without the risk of safety being placed in jeopardy.

***Id.*** at 23.

After review, we conclude the court did not abuse its discretion when it found that termination would best serve the Child's needs and welfare under Section 2511(b), and that no bond existed. As the orphans' court noted, the Child has only been in Mother's unsupervised custody for two days, and the Child is now three years old. The record also establishes that the Child has a strong bond with Foster Mother. Thus, Mother's third issue is meritless.

Finally, we must conduct our independent review to discern whether there are any additional, non-frivolous issues overlooked by counsel, pursuant

- 14 -

to **Flowers**, 113 A.2d at 1250. Here, Mother's mental health issues, coupled with her refusal to understand and treat those issues, have jeopardized the Child's well-being. Upon a "generous" review of the record, we discover no other issues of arguable merit. **See Dempster**, 187 A.3d at 272.

In sum, after review, we agree with trial counsel's assessment that Mother's issues on appeal are frivolous and that the Agency presented clear and convincing evidence to support the termination of Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a) and (b). We therefore grant counsel's petition to withdraw and affirm the orphans' court order terminating Mother's parental rights.

Petition to withdraw granted. Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/30/2022

- 15 -